**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Todd Burch,<br><br>   Plaintiff,<br><br>vs.<br><br>National Credit Union Administration in its capacity as conservator for AEA Federal Credit Union,<br><br>   Defendant. | CV 11-02309-PHX-FJM<br><br>**ORDER** |

The court has before it defendant's motion to dismiss (doc. 6), plaintiff's response (doc. 12), and defendant's reply (doc. 14).

**I**

In 2004 plaintiff purchased land in Yuma, Arizona to develop the Tuscan Ranch Subdivision. Two years later, using money loaned to him by Yuma Community Bank, plaintiff purchased a property consisting of nineteen condominium units in the process of being converted into the Reflections Assisted Living Facility ("the Reflections project"). Plaintiff was approached by an employee of AEA Federal Credit Union ("AEA"), the AEA Chief Lending Officer ("CLO"). The CLO spoke to plaintiff about leaving Yuma Community Bank and coming to AEA because of AEA's capitalized (versus monthly) interest payments. Plaintiff was informed that AEA would continue to loan him funds so that he could complete and sell the Reflections project and host its grand opening, and complete

1    and sell the forty acres at Tuscan Ranch 1 and the fifty acres at Tuscan Ranch 2. AEA agents
2    stated to plaintiff that AEA was solvent, any loans would not exceed limitation amounts, and
3    that AEA would manage plaintiff's loans fairly if he began banking with it. In reliance on
4    these representations, plaintiff began banking with AEA on August 10, 2006. Plaintiff paid
5    off the $500,000 he owed Yuma Community Bank, withdrew all of his funds, and transferred
6    these funds to AEA. AEA provided plaintiff with a credit line of over two million dollars.

7    Plaintiff held the Reflections project grand opening in February 2009, which
8    generated no sales. In March 2009, plaintiff turned the Reflections project into an Assisted
9    Living Facility using funding provided by AEA. AEA's CLO left the bank in December
10   2009. In February 2010, AEA informed plaintiff that one of his lines of credit was $300,000
11   rather than the $1.3 million he thought it was. On February 12 , 2010, AEA denied plaintiff's
12   access to this line of credit. Plaintiff filed for bankruptcy relief. He alleges that AEA began
13   falsely reporting that plaintiff was behind on his loan payments beginning in June 2010.
14   Between July and December of that year, plaintiff funded the Reflections project with a
15   combination of cash and funds borrowed from family and friends. The National Credit
16   Union Administration ("NCUA") assumed control of AEA's operations on December 17,
17   2010 and placed AEA into a conservatorship.

18   Plaintiff originally filed this action in the Superior Court of Arizona in Yuma County
19   asserting three claims for relief: (1) fraudulent misrepresentation; (2) breach of implied
20   covenant of good faith and fair dealing (tortious breach of contract); and (3) defamation. The
21   Superior Court granted the NCUA's motion to substitute as the real party in interest for AEA.
22   NCUA subsequently removed to this court. On February 1, 2012, plaintiff recorded three
23   notices of lis pendens that reference this action. The next day, AEA acquired these
24   properties at a trustee's sale.

25   The NCUA moves to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6), Fed.
26   R. Civ. P. In addition, the NCUA filed a counterclaim, asserting two counts: (1) temporary
27   and preliminary injunction requiring plaintiff to immediately release the lis pendenses and
28   refrain from recording similar documents; and (2) an award of treble damages under A.R.S.

1 § 33-420(A) for the filing of the lis pendenses (doc. 15).

**II**

NCUA argues that plaintiff's claims for fraudulent misrepresentation and breach of the implied covenant of good faith are barred by the D'Oench doctrine and its statutory counterpart, 12 U.S.C. §§ 1787(b)(9)(A), 1788(a)(3). Under the statute, agreements between a plaintiff and a credit union that "tend[] to diminish or defeat the right, title, or interest of the Board, in any asset acquired by it" must be (1) in writing; (2) executed by the credit union at the time the asset was acquired; (3) approved by the board of directors as reflected in the board's minutes; and (4) an "official record of the credit union" from the time of execution in order to be asserted against the NCUA. 12 U.S.C. § 1788(a)(3); see also id. § 1787(b)(9)(A) ("any agreement which does not meet the requirements set forth in section 1788(a)(3) of this title shall not form the basis of, or substantially comprise, a claim against the liquidating agent or the Board"). An institution's promise to perform in the future and a representation concerning the "truthfulness of a warranted fact" are two examples of agreements tending to diminish the interest of the NCUA in an asset. See Langley v. FDIC, 484 U.S. 86, 92-93, 108 S. Ct. 396, 401-02 (1987). The statute codifies the D'Oench doctrine announced by the Supreme Court in 1942, which protects bank authorities from actions "founded on undisclosed conditions or deceptive documents." Brookside Assocs. v. Rifkin, 49 F.3d 490, 493 (9th Cir. 1995). The impact of the doctrine is that a customer may not have a claim against the NCUA based on a credit union's unwritten promise, even if that promise involved fraud. See id. at 494; see also Langley, 484 U.S. at 92-93, 108 S. Ct. at 401-02 (definition of agreement includes fraudulent representations).

According to the NCUA, plaintiff's fraudulent misrepresentation claim is founded upon two alleged oral misrepresentations made by the AEA CLO. First, the CLO's promise that AEA would continue to loan plaintiff the needed funds for his businesses, and second, the CLO's promise that AEA was solvent and plaintiff could rely on its financial statements. A promise to lend more money in the future is an agreement that diminishes the NCUA's interest in the assets it acquired from the credit union. Thus, it is an agreement under 12

1 U.S.C. § 1788(a)(3). Similarly, a promise that AEA is solvent is a representation of the truthfulness of a warranted fact - the institution's financial solvency. Because these agreements were oral, plaintiff cannot enforce them against the NCUA. 12 U.S.C. § 1788(a)(3). Similarly, plaintiff's breach of implied covenant claim is based on AEA's promise to plaintiff that it would financially support him in the development of the Tuscan Ranch subdivision. Again, this is an oral promise to lend money in the future, which is unenforceable against the NCUA.

Plaintiff's defamation count also fails to state an actionable claim. The NCUA as conservator stands in the shoes of the AEA. See id. § 1787(b)(2)(A)(i) (NCUA succeeds to all "rights, titles, powers, and privileges" of credit union). Thus, plaintiff's allegations of AEA's defamatory statements must be brought against the NCUA. Tort claims, however, must be brought against the United States, not against a federal agency. 28 U.S.C. § 2679(a). The Federal Tort Claims Act (FTCA) provides the exclusive remedy for tort actions brought against the United States. Id. § 2679(b)(1). Defamation claims, however, are squarely excluded from the FTCA. Id. § 2680(h). Accordingly, plaintiff cannot succeed on his defamation claim against the NCUA.

Plaintiff's response does not address the impact of 12 U.S.C. § 1788(a)(3) on his fraud and breach of covenant claims, and does not address the defamation claim at all. Instead, he argues that the loan agreements themselves are in writing and are illegal and unenforceable as a *per se* violation of 12 U.S.C. § 1757(5)(A)(x) (part of the Federal Credit Union Act), which states that a loan issued by a credit union cannot exceed ten percent of the "credit union's unimpaired capital and surplus." This is a new theory of liability that does not appear in plaintiff's complaint. To the extent that plaintiff asks to amend his complaint to state a claim against the NCUA for violation of 12 U.S.C. § 1757(5)(A)(x), such amendment would be futile. This is because no private cause of action - whether express, implied, or created by federal common law - exists under the Act. See Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1132 (9th Cir. 1994) (declining to create federal common law right of action under the Federal Credit Union Act); Ridenour v. Andrews Fed. Credit Union, 897 F.2d 715,

1  719-22 (4th Cir. 1990) (no express or implied right of action under the Federal Credit Union Act other than exceptions created by Congress).[1] Thus, plaintiff cannot pursue an action against the NCUA for loans that fail to comply with statutory requirements. See Acciard v. Whitney, 2:07-CV-476-FTM-36DNF, 2010 WL 6813952 at *3-*4 (M.D. Fla. Sept. 17, 2010) (no private right of action under the Federal Credit Union Act for plaintiffs to challenge nonconforming loans).

### III

**IT IS ORDERED GRANTING** defendant's motion to dismiss (doc. 6). Only defendant's counterclaims remain.

DATED this 6th day of March, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

---

[1] The two statutory exceptions creating causes of action for employee whistleblowers, 12 U.S.C. § 1790b, and usury interest, 12 U.S.C. § 1757(5)(A)(vii), are not relevant here.